UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| LEARNING EFFECTS, INC.,  )<br>)<br>         PLAINTIFF  )<br>)<br>v.  )<br>)<br>BOARD OF EDUCATION FOR THE  )<br>CLEVELAND MUNICIPAL SCHOOL  )<br>DISTRICT,  )<br>)<br>         DEFENDANT  ) | CIVIL NO. 07-118-P-H |

## DECISION AND ORDER ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

This is a dispute over whether a Maine company had an enforceable contract with an Ohio school district. The Maine company rendered services to the school district and now seeks payment. The parties agree that Ohio law governs. The Ohio school district has moved for summary judgment on the basis that it never entered into an enforceable contract, and that there is no basis for promissory estoppel because the Maine company could not reasonably believe there was an enforceable promise. After oral argument, I conclude that there is a genuine issue of material fact and **DENY** summary judgment.

**ANALYSIS**

The school district in question is the Cleveland Municipal School District (the "District"). The Maine company is Learning Effects, Inc. ("Learning Effects"). Since approximately 2001 Learning Effects has been providing academic performance assessment programs to the District. Pl.'s Additional Statement of Material Facts ¶ 1 (Docket No. 61) ("Pl.'s Add'l SMF"); Def.'s Reply Statement of Facts ¶ 1 (Docket No. 63) ("Def.'s Reply SMF"). In 2003, Learning Effects submitted a written three-year contract document to the District, but the District never signed it. Def.'s SMF ¶¶ 23-24, 26; Pl.'s Opposing SMF ¶¶ 23-24, 26. But since 2003, the District has paid Learning Effects $900,000 annually out of federal Title I funds for those services up through the academic year ending in 2006. Def.'s Statement of Material Facts ¶¶ 28, 37 (Docket No. 50) ("Def.'s SMF"); Pl.'s Opposing Statement of Material Facts ¶ 28, 37 (Docket No. 61) ("Pl.'s Opposing SMF").

The parties agree that because the District was previously under federal court order, it is subject to unique provisions of Ohio Code Chapter 3311 that do not govern other school districts.[1] Specifically, unlike other districts, the Cleveland District's chief executive officer is given authority by statute to "contract for or employ such consultants . . . as in the chief executive officer's reasonable judgment shall be necessary to design, implement, or evaluate the plan [to measure student academic performance in each school] and to

---

[1] For the history of this legislation, see Mixon v. Ohio, 193 F.3d 389, 393-96 (6th Cir. 1999).

properly operate the school district, subject to appropriations by the board." Ohio Rev. Code Ann. § 3311.72(E).[2] This is the provision on which Learning Effects bases its contract claims.

Here, Dr. Barbara Byrd-Bennett was the chief executive officer until 2006. She testified at deposition that, as chief executive officer, she entered into continuing contracts with certain entities and that Learning Effects was one such consultant. Byrd-Bennett Dep. 26:18-24, June 24, 2008 (Attached to Pl.'s Add'l SMF) (Docket No. 61-4). According to her testimony, Learning Effects' performance thereafter was reviewed each year and, unless Learning Effects was told the contrary, the work continued as usual. Id. 26:18-24, 32:10-18.

Complications to the relationship arose with a major administrative turnover in the District in 2006. Pl.'s Add'l SMF ¶ 20; Def.'s Reply SMF ¶ 20. In February, Dr. Byrd-Bennett retired, to be replaced initially by an interim, then in July a new permanent chief executive officer. Pl.'s Add'l SMF ¶¶ 22-24; Def.'s Reply SMF ¶¶ 22-24. The permanent chief executive officer hired an entirely new team of administrative officers for the District. Pl.'s Add'l SMF ¶ 26; Def.'s Reply SMF ¶ 26.

In May, prior to the installation of the new permanent chief executive officer and his team, Learning Effects submitted a new three-year contract

---

[2] This supersedes the otherwise applicable requirement imposed on school districts that "[n]o contract shall be binding upon any [district school] board unless it is made or authorized at a regular or special meeting of such board." See Ohio Rev. Code Ann. § 3313.33.

3

document, as it had in the past, but this time it proposed elevating the yearly payment to $970,000. Def.'s SMF ¶ 47; Pl.'s Opposing SMF ¶ 47. The responses from the District were as follows:

- On May 5, 2006, Sherry Ulery ("Ulery"), the District's Executive Officer for Professional Development, Pl.'s Add'l SMF ¶ 13; Def.'s Reply SMF ¶ 13, e-mailed Learning Effects: "I have forwarded this on to our Legal Department. After they approve it, I will send it to our CFO for approval. Once that is over we can proceed." Def.'s SMF ¶¶ 48-49; Pl.'s Opposing SMF ¶¶ 48-49.

- On June 23, 2006, Learning Effects inquired as to the status of the proposed three-year contract, and Ulery responded by e-mail:

  > I will not be able to input a purchase order until the Title [I] money becomes available. The contract will not be approved until we are guaranteed our Title [I] allocation and the accounts are set up. As you know, this does not usually happen until late July, early August or sometimes even September. With our transition, I would not look for things to fall into place until August.

  Def.'s SMF ¶ 53; Pl.'s Opposing SMF ¶ 53.

- In early September 2006, Ulery e-mailed Learning Effects asking for a one year contract proposal because she did not think Learning Effects' three-year proposed contract would be accepted. Def.'s SMF ¶ 54; Pl.'s Opposing SMF ¶ 54.

- On September 20, 2006, the District notified Learning Effects that it "will not be contracting," and that the District was "not willing to approve a

4

$977,000 [sic] contract with an outside consultant that may or not [sic] fit with the direction of the district." Def.'s SMF ¶ 66; Pl.'s Opposing SMF ¶ 66. That was the first notification to Learning Effects that its services were no longer wanted. Pl.'s Add'l SMF ¶ 28; Def.'s Reply SMF ¶ 28. By then, Learning Effects had already completed a quantity of work for the District for the 2006-07 academic year. Def.'s SMF ¶ 58; Pl.'s Opposing SMF ¶ 58.

I conclude that the jury could find that Dr. Byrd-Bennett had created a continuous contract with Learning Effects during her tenure as chief executive officer. In light of the parties' history and the substance of the communications I have quoted, it is a factual question for the jury whether the conduct and communications amounted to a one-year renewal of a continuing contract at the rate of $900,000 before the September 20 disavowal.[3]

But Section 3311.72 has an additional condition that Learning Effects must satisfy to come within the chief executive officer's contracting authority. Specifically, the chief executive officer's contracting authority is "subject to appropriations by the board." Ohio Rev. Code Ann. § 3311.72(E). A jury could find that the District's board made such an appropriation when on June 23, 2006, before the new permanent chief executive officer took office, the District's school board adopted a temporary partial appropriation resolution as follows:

---

[3] Learning Effects is not seeking damages for the full contractual amount but only payment for services rendered through September 30, 2006. Invoice From Learning Effects, Inc. to Cleveland Mun. Sch. Dist. (Nov. 30, 2006) (Ex. C to Pl.'s 2d Am. Compl.) (Docket No. 16-4).

5

> **Resolved**, by the Board of Education of the Cleveland Municipal School District in order to provide for the current expenses and other expenditures of said District during the period of July 1, 2006 through December 31, 2006, the General Fund at fifty percent (50%) and the other funds as stated, as set forth in this Temporary Partial Appropriation Measure, a copy of which is attached as Exhibit A,[4] are hereby set aside and *appropriated* for the several purposes for which expenditures are to be made for and during said period, all as set forth and shown hereinafter.

Pl.'s Add'l SMF ¶ 31; Def.'s Reply SMF ¶ 31 (emphasis added).[5]

The District argues that this resolution is insufficient and that the statute requires a separate resolution, or at least language within the general resolution that refers explicitly to Learning Effects. Reply Brief of Def. in Support of Mot. for Summ. J. 4-5 (Docket No. 62). But I conclude that this resolution meets the statutory requirement of "appropriations by the board." As Learning Effects asserted at oral argument, it would make little sense to speak of delegating contracting authority to the chief executive officer and yet in the same statutory subsection require specific board approval for every particular contract she entered into. Then, where is the delegation? The more reasonable reading of the statute is that it was designed to prevent the chief executive officer from exceeding board appropriations in her operation of the

---

[4] Exhibit A is a listing that includes Title I funds.
[5] The District's board adopted a final appropriation measure on October 4, 2006 (after the September 20 disavowal of Learning Effects' services) that covered the entire fiscal year through June 30, 2007. The Title I funds increased modestly to $62,976,000. Pl.'s Add'l SMF ¶ 33; Def.'s Reply SMF ¶ 33.

District, perhaps even particular categories of expenditures.[6]  Whether, in addition to the passage of this appropriation resolution, there was some further condition or procedure to which the parties agreed is a question for the jury.

I am doubtful that Learning Effects has a meritorious separate promissory estoppel claim.  It seems to me that the promise in question is the same as that for the contract claim, and that Ohio law about reasonable reliance on statements by government officials who do not have authority to make promises is adverse to Learning Effects.  I conclude, however, that it would not be useful to rule finally now, because I am permitting the contract claim, Counts I and III, to continue.

Accordingly the defendant's motion for summary judgment is **DENIED**.

**SO ORDERED.**

**DATED THIS 14TH DAY OF OCTOBER, 2008**

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[6] Here, for example, Learning Effects concedes that its contract each year was subject to the District receiving federal Title I funds.  Pl.'s Add'l SMF ¶ 6; Def.'s Reply SMF ¶ 6.